**ILLINOIS STATE EMPLOYEES UNION, COUNCIL 34, et al., Plaintiffs,**

v.

**James D. HODGSON, Secretary of Labor of the United States, et al., Defendants.**

**No. 71 C 2636.**

United States District Court,
N. D. Illinois, E. D.

Dec. 20, 1971.

Gilbert A. Cornfield, Chicago, Ill., for plaintiffs.

James R. Thompson, U. S. Atty., Michael Berman, Asst. U. S. Atty., Chicago, Ill., William J. Scott, Ill. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

The defendants' motions to dismiss or for summary judgment present the novel question of whether notice to an interested labor union from a state applying for funds pursuant to the Emergency Employment Act of 1971, P.L. 92–54, 85 Stat. 146, is a condition precedent to approval by the Secretary of Labor of the state's application. If this question is answered in the affirmative, defendants' motions must be denied. If in the negative, we must determine whether the Secretary and the State of Illinois have provided the plaintiff union with all the rights to which it is entitled under the Act.

On July 12, 1971, emergency legislation was enacted by Congress in the form of the Emergency Employment Act of 1971. The purpose of the Act was immediately to provide unemployed and underemployed persons with transitional employment in jobs providing needed public services to enable these persons to move into employment or training not supported under the Act. The implementation of this program involved the federal government funding eligible applicants, such as the State of Illinois, so that they could create jobs providing needed public services, with special emphasis being placed upon the hiring of persons from socioeconomic backgrounds generally associated with substantial unemployment. Pursuant to § 12(e) of the Act, the Secretary of Labor, within his discretion, can accept, approve, and initiate funding of grant applications submitted in accordance with the Act and make all rules and regulations necessary to effectuate the purposes of the Act. On August 14, 1971, the Secretary promulgated and published in the Federal Register regulations, set out as Title 29, Subtitle A, Part 55, "Grants Under the Emergency Employment Act of 1971," hereinafter referred to as Regulation 55. Since the purpose of the Act was to make assistance available and to provide employment as expeditiously as possible, compliance with the notice and public procedure requirements of 5 U.S.C. § 553 were waived and the regulations were effective upon publication.

The controversy involved in this litigation centers around Section 12(c) of the Act. That section states:

Where a labor organization represents employees who are engaged in similar work in the same area to that proposed to be performed under any pro-

gram for which an application is being developed for submission under the Act, such organization shall be notified and afforded a reasonable period of time in which to make comments to the applicant and to the Secretary. The plaintiff contends that the State of Illinois and the Secretary have entered into an agreement under the Act which is unlawful because of the State's failure to provide notice to plaintiff of the State's application.

Immediately subsequent to the publication of Regulation 55, the Secretary approved the State of Illinois' pending application for an initial funding on August 17, 1971 in the amount of $447,580.00. No notice had been provided to the plaintiff by the State of this initial funding application, but this failure did not create any rights for the plaintiff because Regulation 55.10(a) specifically exempts initial funding applications from the notice requirements. Thereafter, the State used this money to collect data to develop its grant application and to begin its initial hiring of persons qualified to participate under the Act, as authorized under Regulation 55.1(f). On October 6, 1971, the Regional Manpower Administration (the agent of the Secretary administering this program in this region) received a letter from the plaintiff demanding that all funding and implementation of the initial funding application immediately halt because they had not received notice of the application and had, therefore, not had the opportunity to comment pursuant to Section 12(c) of the Act. On October 7, 1971, the Secretary approved and signed the grant application which had been submitted by the State on October 5, 1971, but unilaterally modified it, as he is empowered to do, to require, among other things, that the State submit within thirty days its certification that the labor organizations entitled to be notified of the application pursuant to Section 12(c) had in fact been so notified in accordance with Section 55.10 of the Regulations. On November 5, 1971, two days after the instant lawsuit was filed, the State provided the plaintiff with notice and a complete copy of the grant agreement entered into between the Secretary and the State.

■ The initial questions presented are whether this Court has jurisdiction to entertain this suit and whether the plaintiff has standing to raise the issue that it does. The plaintiff asserts that it has federal question jurisdiction under 28 U.S.C. § 1331 because its suit arises under the Emergency Employment Act and because the amount in controversy exceeds $10,000 (the payments involved in the State of Illinois program will be over $4,000,000). We believe, therefore, that we do have jurisdiction.

■ As to the issue of standing, we believe that the plaintiff Union clearly has standing to raise the issue of whether notice was properly given to the appropriate labor organizations pursuant to Section 12(c) of the Act. The cases make it clear that the answer to the question of whether a plaintiff has standing to seek enforcement of a particular statutory requirement that is alleged to have been breached is whether Congress' purpose in enacting that requirement was to protect the plaintiff's interests. Hardin v. Kentucky Utilities Company, 390 U.S. 1, 5–7, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); Norwalk Core v. Norwalk Redevelopment Agency, 395 F.2d 920 (2d Cir. 1968).

■ It is clear from the unambiguous language of Section 12(c) that Congress believed that a labor organization that represented employees engaged in similar work as that proposed to be performed under a local program funded by the Act deserves the right to have its comments heard by the state and federal authorities; Congress was obviously protecting the interests of unions such as the plaintiff at least to the limited degree of allowing its comments to be heard. We cannot, therefore, imagine that any party could conceivably have more standing to raise the issue of failure to be heard than the plaintiff. Ac-

cordingly, we conclude that the plaintiff has standing to attack the Secretary's action in approving the program without it being notified as required by the Act and that this Court has jurisdiction to hear the suit.

We now proceed to the merits of the plaintiff's complaint. The gist of its allegations is that the State failed to provide it with timely and proper notice of the grant application, the Secretary failed to afford a reasonable period of time in which to make comment on the grant application and that, therefore, the grant agreement is illegal notwithstanding that the State has subsequently provided it with a copy of the agreement and has solicited its comments. There is no dispute in the record that the plaintiff was not initially notified and afforded an opportunity to comment pursuant to Regulation 55 and Section 12(c) of the Act.

We believe the main issue in this case to be whether notice and invitation to comment which was sent to the plaintiff subsequent to the approval of the grant overcomes the original deficiency in the State and federal handling of the application. Put in other terms, the primary issue is whether notice to labor organizations pursuant to Section 12(c) is a condition precedent to the Secretary's approval of a grant application. If it is not a condition precedent, we fail to see how the plaintiff has been harmed or how it otherwise states a cause of action.

We believe that a review of the statute indicates conclusively that Congress did not intend the notification to be a condition precedent to approval of a grant application. Section 12(c), quoted in its entirety above, states that labor organizations such as the plaintiff "shall be notified and afforded a reasonable period of time in which to make comments to the applicant and to the Secretary." In another section of the Act, Congress required that other interested parties be given notice and an opportunity to comment and specifically provided that no approval could be had of any application unless the notice and opportunity had been provided. Thus, in Section 8 of the Act, Congress stated:

An application or modification or amendment thereof, for financial assistance under this Act *may be approved only if the Secretary determines that* . . .

(3) *an opportunity has been provided to officials of the appropriate units of general local government to submit comments* with respect to the application to the applicant and to the Secretary; and

(4) *an opportunity has been provided to the Governor of the State to submit comments* with respect to the application to the applicant and to the Secretary. (Emphasis added)

When Sections 8(3) and (4) are compared with Section 12(c), it becomes apparent that Congress was placing the required notice and invitation for comment to state and local governmental officials upon a different footing than the notice and invitation to comment required to be sent to appropriate labor organizations; both are required but the former notice is a condition which the Secretary must determine to have been met prior to his approval of an application whereas the latter is merely one that must be met within a "reasonable period of time." Given the difference in the statutory language, we conclude that the reasonable period of time referred to in Section 12(c) may be prior or subsequent to the approval of the application.

This conclusion is buttressed by other subsections of Section 12. In Sections 12(a) and 12(f) through (i) Congress also chose conditional language, i. e., "the Secretary shall not provide financial assistance for any program or activity under this Act unless he determines. . . ." It is apparent that Section 12(c) contains *no* conditioned language as the aforementioned sections but merely limits itself to the accomplishment of the notice to the unions. Had Congress

intended to make notice to the plaintiff and other unions a condition precedent to approval of grant applications, it would have placed this condition with the notice requirements of Section 8 which is preceded by the conditional language or would have repeated the same type of conditional language of Sections 8, 12(a) and 12(f) through (i) rather than under Section 12(c) without any conditional language attached to it. We believe, therefore, that the Secretary, within his discretion, could properly approve and implement funding of the State's grant application while requiring compliance with Section 12(c) of the Act at a later date.

The only argument in the plaintiff's brief which would support a conclusion contrary to the one above is that it might lose some of its power of persuasion (which is all that it is entitled to under Section 12(c)) if it is not heard until after the Secretary has approved the program. We would note in this regard that, if the plaintiff should succeed in convincing the State that policy reasons would suggest an amendment to the plan, the Act and Regulation 55 authorize the State to seek an amendment to its plan. And if the plaintiff should succeed in convincing the Secretary that the State's program either violates federal law or regulations or should be changed for policy reasons, the Secretary is authorized unilaterally to modify or terminate the agreement in whole or in part. See, Regulation 55.26(a) and (b). Accordingly, we do not believe that our reading of the Congressional intent to place unions on a different footing than state and local officials derogates those rights granted to unions in Section 12(c) of the Act.

The sole remaining issue before the Court is whether the State has now complied with Section 12(c) of the Act and with the appropriate regulations. The plaintiff appears to argue that it does not possess sufficient information to reach a conclusion as to its comments concerning the grant agreement. Regulation 55.10(a)(2) requires that only a summary of the application be sent to appropriate labor organizations, whereas in the instant case, the plaintiff was served with a full copy of the entire agreement between the Department of Labor and the State of Illinois. The State thus has complied with the Regulations and with the Act. Plaintiff has thus received everything to which it is entitled notwithstanding its assertions that such information is not enough.

Much of the plaintiff's argument submitted in support of its complaint is in reality nothing more than its criticisms of the form of the grant agreement approved by the Secretary. If this is plaintiff's position, it should submit whatever comments it has to the Secretary who has indicated his willingness to receive and consider them at any time.

■ Based upon the foregoing, we believe that the State's failure to provide notice of its application to the plaintiff prior to the Secretary's apporval of the grant application does not invalidate the grant because the State's subsequent notice to the plaintiff has provided it with all to which it is entitled under the statute notwithstanding that the Program Guidelines issued by the Secretary contemplate that such notice must be given fifteen days prior to the submission of a grant application. We conclude, therefore, that the plaintiff's complaint, which was filed prior to the time that it received any notice or information whatsoever, does indeed state a cause of action, but that the subsequent action taken by the State and the Secretary conclusively indicates that they are entitled to judgment as they have each performed all that which they are obligated to do under the letter, if not the spirit, of the law.

An order will enter granting the defendants' motions for summary judgment and dismissing the plaintiff's complaint with prejudice and without costs.